# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| KELLY E. CULVER, | ) |
| Petitioner, | ) |
| vs. | ) No. 1:16-cv-1815-WTL-DKL |
| DUSHAN ZATECKY, | ) |
| Respondent. | ) |

**Entry Discussing Petition for Writ of Habeas**

**Corpus and Denying Certificate of Appealability**

Once convicted and after exhaustion or waiver of any right to appeal, a defendant is presumed to stand "fairly and finally convicted." *United States v. Frady,* 456 U.S. 152, 164 (1982). For the reasons explained in this Entry, the effort of Kelly E. Culver to show otherwise fails. His petition for a writ of habeas corpus will therefore be denied. In addition, the Court finds that a certificate of appealability should not issue. This disposition is compelled by the following facts and circumstances:

1. Culver was convicted by an Indiana jury of the May 11, 1997, murder of Charles Horton. His conviction was affirmed on appeal and the trial court's denial of his petition for post-conviction relief was likewise affirmed. This action followed.

2. The background was outlined by the Indiana Supreme Court in its disposition of Culver's direct appeal:

The facts most favorable to the verdict indicate that in the early morning hours of May 11, 1997, Defendant left a neighbor's house intoxicated and was followed home by his girlfriend, Lori McCullough. Defendant began arguing with McCullough. When these arguments escalated, McCullough called her brother, Brad Peters, to come pick up her and her children. Defendant threatened to fight Peters and then rummaged through a kitchen drawer where he had previously stored an ice pick.

As they left the apartment arguing, other residents had gathered in the hallway, including Charles Horton who was standing in his doorway. According to one witness, Horton was preparing for work which began at 5:00 a.m. By 4:20 a.m., Peters had managed to pick up his sister and her children without further incident.

Shortly after 5:00 a.m., while driving on Sanford Road just east of State Road 63, Mark Barrett observed Horton's car parked in the middle of the road. Concerned that he would be unable to bypass the car without hitting it, Barrett slowed down briefly and then stopped his car. He observed Defendant bent over along the side of the road as if he were searching for an item. Defendant approached Barrett's vehicle, then turned and walked away. At this time, Defendant was wearing a black jacket. Later that morning, Chris Newhart saw Defendant trying to hitchhike a few hundred feet north of Sanford Road. Now Defendant was not wearing a shirt or jacket despite the cold weather.

Around 6:00 a.m., at the intersection of State Road 63 and Sanford Road, Defendant approached Stephen Gariepy's truck as Gariepy stopped at a stop sign. Defendant solicited Gariepy's help, telling him that he and a friend had been attacked, that he believed his attackers killed his friend, and that he needed a ride into Terre Haute to notify police. Because Defendant was shirtless, Gariepy gave him a plaid shirt to wear. At approximately 6:15 a.m., Defendant exited Gariepy's truck at a railroad crossing in Terre Haute within the proximity of McCullough's residence. Defendant and Gariepy parted without ever having notified the police of the alleged attack.

At 6:50 a.m., while asleep at her residence, McCullough was awakened by a "nervous and scared" Defendant. Defendant, who had been wearing black sweatpants and a black Adidas jacket that morning, was now wearing black sweatpants and a plaid shirt. He had mud all over his sweatpants and red stains on his thermal boxer shorts. As Defendant requested, McCullough gave him a shirt to wear. As he changed clothes, she saw him remove a bundle of money from his sweatpants. Before leaving, Defendant told McCullough that he had done something wrong, that he was in trouble, and to tell people that he never owned a black Adidas jacket.

At 9:30 a.m., Vigo County Police Officer Steve Barnhart discovered Horton's abandoned car on Sanford Road just east of State Road 63. Officer Barnhart observed blood in the car and on the road outside of the car. Looking in the nearby wooded area, Officer Barnhart found Horton's body. Horton had been stabbed twenty-eight times with an ice-pick. Horton received a final stab wound through his right eye that entered his brain. Officer Barnhart discovered the body with the ice-pick still in Horton's eye.

> Three days after discovering Horton's body, police found Defendant's Adidas jacket near the intersection of Sanford Road and State Road 63. After obtaining a search warrant for Defendant's apartment, officials uncovered a pair of black sweatpants and thermal boxer shorts in the kitchen trash container.
>
> The State charged Defendant with Murder. The jury found Defendant guilty as charged. The trial court sentenced Defendant to 65 years of incarceration.

*Culver v. State,* 727 N.E.2d 1062, 1064–65 (Ind. 2000) (footnotes omitted)(*Culver I*).

3. Culver seeks relief pursuant to 28 U.S.C. § 2254(a). "The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 133 S. Ct. 1911, 1917 (2013). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to Culver's petition because it was filed after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997).

4. The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

5.      In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

6.      A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407–408). "A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Penry*, 532 U.S. at 793. That means that "even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was *so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement*." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (emphasis added, citations, quotation marks, and alterations

omitted). "State-court factual findings [ ] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

7. When no state court has addressed the merits of the federal constitutional issue, "the claim is reviewed *de novo*." *Cone v. Bell,* 556 U.S. 449, 472 (2009).

8. If a state court adjudicated the merits of a claim, deferential AEDPA standards described above must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). The scope of relief, moreover, is governed by 28 U.S.C. § 2254(a) itself. "[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). A viable habeas claim pursuant to § 2254(a) necessarily precludes a claim which is based on alleged noncompliance with federal law. *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010); *Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004)("To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim 'presents no federal issue at all.'") (quoting *Bates v. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991)).

9. In addition to the foregoing substantive standards, "[a] state prisoner . . . may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim." *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir. 2000). "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Greene,* 523 U.S. 371, 375 (1998) (citing *Wainwright v. Sykes,* 433 U.S. 72

(1977)). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir. 1992), *cert. denied,* 508 U.S. 962 (1993). When procedural default has occurred, it can be overcome if a habeas petitioner "can demonstrate either (a) cause for the default and prejudice (*i.e.,* the errors worked to the petitioner's '*actual* and substantial disadvantage,'); or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (*i.e.*, a claim of actual innocence)." *Conner v. McBride,* 375 F.3d 643, 648 (7th Cir. 2004) (internal citations omitted); *see also Dellinger v. Bowen,* 301 F.3d 758, 764 (7th Cir. 2002), *cert. denied,* 537 U.S. 1214 (2003).

10. Culver's habeas claims are the following:

(a) Culver contends that the trial court erroneously admitted blood samples without a chain of custody;

(b) Culver contends that the trial court violated his Sixth Amendment rights when it admitted the DNA expert's testimony because the State violated a discovery order;

(c) Culver contends that his trial counsel was ineffective;

(d) Culver contends that the trial court should have instructed the jury on voluntary manslaughter;

(e) Culver contends that the trial court's sentencing findings did not support his enhanced sentence;

(f) Culver contends that his appellate counsel was ineffective; and

(g) Culver contends that the post-conviction courts erred by not addressing the merits of some of his arguments.

11. The respondent is correct that in the circumstances of this case claims (a), (d), (e) and (g) are based on asserter errors under Indiana law and hence are not cognizable here. *See Wilson v. Corcoran,* 131 S. Ct. 13, 16 (2010)("But it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); *Del Vecchio v. Illinois Dep't. of Corr.,* 31 F.3d 1363, 1370 (7th Cir. 1994) (habeas corpus

jurisdiction is limited to evaluating alleged violations of federal statutory or constitutional law); *Bloyer v. Peters,* 5 F.3d 1093, 1098 (7th Cir. 1993) (citing *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)).

12. Culver's contention that the trial court violated his Sixth Amendment rights when it admitted the DNA expert's testimony was asserted in his direct appeal. The Indiana Supreme Court found that this claim had been waived because Culver he did not object to the testimony at trial. *Culver I,* 727 N.E.2d at 1066. In other words, there was no contemporaneous objection to the admission of the evidence at trial, contrary to the requirements of Indiana law. *Id.* This was a finding of procedural default. *Clemons v. Pfister,* 845 F.3d 816, 819 (7th Cir. 2017) (citing *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016)); *Hogan v. McBride,* 74 F.3d 144, 146 (7th Cir. 1996) ("Forfeiture under § 2254 is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court."). Culver has not shown the presence of circumstances permitting him to overcome this procedural default. Accordingly, the Court does not reach the merits of this claim.

13. Culver next makes the familiar claim that he was denied the effective assistance of counsel at trial. *United States v. Farr,* 297 F.3d 651, 658 (7th Cir. 2002)("We have observed in the past that criminal defendants frequently 'demonize' their lawyers. If we are to believe the briefs filed by appellate lawyers, the only reasons defendants are convicted is the bumbling of their predecessors. But lawyers are not miracle workers. Most convictions follow ineluctably from the defendants' illegal deeds."). The Indiana Supreme Court properly recognized that the governing Supreme Court case for resolving an ineffective assistance claim is *Strickland v. Washington,* 466 U.S. 668 (1984).

> "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694).

*Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014) (parallel citations omitted). The Supreme Court framed the determinative question as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686.

14. The Indiana Supreme Court fielded two specifications of ineffective assistance of counsel in Culver's direct appeal:

- The first specification was Culver's contention that he was denied the effective assistance of counsel at trial because no objection was made to the DNA expert's testimony. This claim was asserted in Culver's direct appeal. The Indiana Supreme Court rejected this claim because the trial court would not have sustained an objection at trial. *Culver I,* 727 N.E.2d at 1066-67. This conclusion was reached, it was found, because Culver had adequate time to prepare for the DNA evidence. *Id.* at 1067. In turn, there was no ineffective assistance of counsel for failing to make an objection which would not have been sustained because "[i]t is not deficient performance to fail to raise an argument with no real chance of success." *Hough v. Anderson,* 272 F.3d 878, 898 n.8 (7th Cir. 2001).

- Culver's second specification was that his trial counsel was ineffective for not objecting to the chain of custody for the blood samples. As to the victim's blood, which the expert testified matched the blood on Culver's jacket, the Indiana Supreme Court found a continuous chain of custody, so there was no error in its admission under Indiana law. *Culver I,* 727 N.E.2d at 1067-68. Thus, an objection would not have been sustained. As for the admission of Culver's blood, which the expert testified did not match the blood on his jacket, the Indiana Supreme Court concluded that the trial court would have sustained an objection because the State did not show a continuous chain of custody, *id.* at 1068, but also found that this omission was not prejudicial under *Strickland* because "[t]he jury had overwhelming evidence to convict [Culver] without the challenged serological evidence." *Culver I,* 727 N.E.2d at 1069. It then summarized this evidence, *id.,* from which the court reasonably concluded that there was no reasonable probability that the result of Culver's trial would have been different without the evidence of his blood, which merely ruled him out as the contributor to the blood on his jacket. *Id.*

The Indiana Supreme Court's conclusion on these points—first, rejecting a claim of deficient performance, and second, finding no prejudicial error—was entirely reasonable under *Strickland* in light of the proceedings at trial and the evidence. And because it was a reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011).

15. Culver's representation in his direct appeal then came under attack in the action for post-conviction relief. *Culver v. State*, 55 N.E.3d 393 (Ind.Ct.App.), *transfer denied,* 54 N.E.3d 370 (Ind. 2016)(*Culver II*). The Indiana Court of Appeals recognized the *Strickland* standard and likewise applied it in a reasonable fashion. The specifications were these, *viz.*, appellate counsel should have argued that his trial counsel was ineffective for "conceding" Culver's guilt during voir dire, his appellate counsel should have argued that his trial counsel was ineffective for not investigating Culver's mental health history, and his appellate counsel should have challenged, in a petition for rehearing, the Indiana Supreme Court's application of the *Strickland* prejudice prong.

16. As for the performance prong, the Indiana Court of Appeals concluded that Culver's "failure to present any testimony from [his] trial or appellate counsel is dispositive." *Culver II,* at *4. Without a record of appellate counsel's strategy, the Court was not willing to "speculate on why the strategies or reasons raised by Culver were not advance[d] by his counsel" *Id.* The Indiana Court of Appeals also concluded that, even if Culver's claims of deficient performance were true, they did not "establish that he suffered any prejudice. As the Indiana Supreme Court correctly determined, evidence of Culver's guilt was overwhelming . . . ." *Id.* at *5. These findings simply rest on Culver's failure to meet his burdens under *Strickland* to establish both deficient performance and prejudice. The absence of evidence from or concerning his appellate attorney's strategy, together with the overwhelming evidence of Culver's guilt, show that

the analysis and conclusions of the Indiana Court of Appeals constitute a reasonable application of *Strickland.* Considering the "doubly deferential" AEDPA standard applicable here, these conclusions withstand the deferential scrutiny which this Court must apply. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1410–11 (2011) (citation omitted). Under 28 U.S.C. § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

17. "[H]abeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court." *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 14 (1992) (O'Connor, J., dissenting) (internal citations omitted). In this case, Culver has encountered the hurdles produced by the requirement of cognizability as to several claims and by the doctrine of procedural default as to one claim. He has not shown the existence of circumstances permitting him to overcome these hurdles. The other claims do not warrant relief in light of the deferential standard required by the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *Stern v. Meisner*, 812 F.3d 606, 610 (7th Cir. 2016) ("In other words, [the habeas petitioner] must show a complete absence of reasonableness in the [state] appellate court's decision.") (citing *Harrington,* 562 U.S. at 98).

18. Culver's petition for writ of habeas corpus is therefore **denied.** Judgment consistent with this Entry shall now issue.

19. Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254 Proceedings*, and 28 U.S.C. § 2253(c), the Court finds that Culver has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **declines** to issue a certificate of appealability.

IT IS SO ORDERED.

Date: 4/18/17

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov

KELLY E. CULVER
850836
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only